IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLORADO

| | | |
|---|---|---|
| BRETT STALLINGS, Individually and | § | |
| on Behalf of All Others Similarly Situated, | § | CASE NO: 1:17-CV-01939 |
| Plaintiff, | § | |
| | § | COLLECTIVE ACTION |
| v. | § | (29 U.S.C. § 216(b)) |
| | § | |
| ANTERO RESOURCES CORP., | § | |
| Defendant. | § | |

**DEFENDANT'S RESPONSE TO PLAINTIFF'S EXPEDITED MOTION FOR
CONDITIONAL CERTIFICATION AND NOTICE TO PUTATIVE CLASS MEMBERS**

Defendant Antero Resources Corporation ("Antero") responds to Plaintiff Brett Stallings'

Expedited Motion for Conditional Certification and Notice to Putative Class Members, as follows:

**SUMMARY OF THE ARGUMENT**

Stallings, a Pipeline Inspector ("PI") and Solids Control Operator ("SCO") who worked

for Antero as an independent contractor in Marietta, Ohio,[1] fails to meet his burden to establish

that he is similarly situated to other PI and SCO independent contractors, who he claims comprise

a putative class of misclassified workers. First, Stallings has not put forth "substantial" allegations

demonstrating that he and putative class members are similarly situated. Although he has alleged

generally that he and putative class members were subjected to a single decision, policy, or plan,

Stallings' allegations cannot be properly characterized as "substantial" when the allegations

contained in the Complaint are largely conclusory, portions of his supporting Declaration rely on

hearsay from unnamed sources, he has not identified any other putative class member, and he has

submitted no declaration other than his own in support of his motion.

---

[1] Antero has not found any records confirming that Stallings ever performed services for Antero as an SCO and,
therefore, does not concede the truth of this allegation.

Moreover, Stallings is not similarly situated to other independent contractors because Antero's engagement of various PIs and SCOs differed based on numerous factors, and the positions included in his proposed class are not similarly situated because they are distinct and separate, with no overlapping job responsibilities.

Finally, if the Court certifies a collective action, the class scope should be narrowed or divided into subclasses. Additionally, Stallings' proposed notice and means of distribution are improper. The content of the notice is deficient because, among other things, it fails to provide putative class members with a full understanding of the potential costs and obligations associated with participating in this lawsuit. Further, Stallings is not entitled to multiple methods of disseminating the notice, nor has he shown that steps such as reminder notices are necessary.

## MATERIAL FACTS

Antero is a natural gas producer in the Marcellus and Utica shale fields in Ohio and West Virginia. As part of its operations, Antero engaged certain companies to provide independent contractors skilled or experienced in various fields, including as PIs and SCOs.

SCOs work at the well site while a rig is being drilled. As a well is drilled, it produces cuttings, which are a waste product that is disposed of off-site. Declaration of Eric Eddy, Exhibit A ("Ex. A") at ¶¶ 4, 7. During the relevant time period, Antero engaged other companies to manage the waste disposal process. *Id.* Those companies relied on their own personnel to perform two different functions: operating equipment used to separate cuttings from drilling fluid and operating equipment used to transfer cuttings for permanent disposal. *Id.* Contractors performing either of these functions could be referred to as SCOs. Antero did not employ or engage individuals as SCOs. *See id.* It did not direct its contractors as to who they should use in this role

and it did not oversee the work that was being done.  *See id.*  Instead, it relied on the companies it paid for this service to ensure that qualified, trained operators performed the work.  *See id.*  In fact, to date, Antero has not been able to locate an invoice that identifies Plaintiff as a solids control operator in either of the capacities described above.  *Id.* at ¶ 8.

PIs, on the other hand, are engaged on a project by project basis to provide inspection services for pipelines being constructed by Antero.  Each Antero project is run by a Project Manager ("PM").  Declaration of Jeremy Gramling, Exhibit B ("Ex. B") at ¶ 3.  The PM for each project is responsible for identifying the types of inspectors needed for each specific project.  *Id.* Antero engages those inspectors in a variety of ways.  *Id.* at ¶ 5.  Some are engaged directly, through limited liability companies or similar entities that are owned by the individual inspector while others are engaged through larger companies who provide multiple inspectors pursuant to a single master services agreement and on whose behalf the consulting firm provides certain administrative services.  *Id.* at ¶ 4.  Each inspector's job duties vary based on the project for which he is engaged and based on his particular skill set.  *Id.* at ¶¶ 4, 7.

## ARGUMENT

### I.    Standard.

To conditionally certify a class under the Fair Labor Standards Act ("FLSA"), a plaintiff must demonstrate that he is similarly situated to putative class members.  *Bryant v. Act Fast Delivery of Colo., Inc.*, No. 14-CV-00870-MSK-NYW, 2015 WL 3929663, at *2 (D. Colo. June 25, 2015).  Courts in this district apply a "two-step, *case-by-case* process" to make this determination.  *Id.* (emphasis added) (citing *Thiessen v. Gen. Elec. Capital Corp.*, 267 F.3d 1095, 1102–05 (10th Cir. 2001)).  During this first phase, similarity is demonstrated by setting forth

"substantial allegations that the putative class members were together the victims of a single decision, policy, or plan." *Id.* As detailed more fully below, Stallings has failed to meet his burden to show certification is proper, therefore, his motion should be denied.

## II. Conditional certification is not appropriate because Stallings' assertions do not meet even a lenient, notice-stage conditional certification standard.

Whether a plaintiff has set forth "substantial allegations" demonstrating he and putative class members are similarly situated is measured by whether a plaintiff has adequately plead such allegations in the complaint so as not to be conclusory or vague, and that the plaintiff's evidence sufficiently supports his allegations so as to make them "substantial." *See Abdulina v. Eberl's Temp. Servs., Inc.*, No. 14-CV-00314-RM-NYW, 2015 WL 12550929, at *2-3 (D. Colo. Apr. 27, 2015); *Bryant*, 2015 WL 3929663, at *4; *Saarela v. Union Colony Protective Servs., Inc.*, No. 13-CV-01637-MSK-MJW, 2014 WL 3408771, at *1 (D. Colo. July 14, 2014). Courts in this district have denied such certification where they have found a plaintiff's complaint and any accompanying declarations failed to set forth "substantial" allegations. *See e.g., Saarela*, 2014 WL 3408771, at *3 (denying conditional certification for proposed class of security guards); *Bryant*, 2015 WL 3929663, at *4 (limiting the scope of a class because were conclusory, not substantial, and unsupported by evidence).

*Bryant* illustrates this rule. In *Bryant*, the plaintiffs' assertion that other drivers were not paid overtime was derived "through [their] discussions with similarly situated drivers," which the court found to be "largely conclusory and vague" and unsupported by the declarations submitted in support of the motion. 2015 WL 3929663 at *4. As a result, because the only allegations supported by evidence were those pertaining drivers serving one particular customer, the Court declined to "to conditionally certify [the] case as a collective action under the broad parameters

suggested by the Plaintiffs," instead certifying a much narrower class.  *Id.*

### A.    Stallings' Complaint is largely conclusory.

Although Stallings' Complaint references the elements necessary to prove a claim of misclassification and unpaid wages under the FLSA, the allegations supporting those claims are generalized and lack the specificity necessary to satisfy the "substantial" requirement.   For example, Stallings alleges that "the daily and weekly activities of the Putative Class Members were routine and largely governed by standardized plans, procedures, and checklists created by Antero," *id.* at ¶ 36, but provides no detail as to which plans, procedures, or checklists Antero subjected him.   Stallings also alleges "Antero determined [his] opportunity for profit and loss" without providing any insight into how Antero's actions specifically lead to this outcome.  *Id.* at ¶ 24.   He concludes by contending generally that Antero's alleged "illegal practices" violate the FLSA and support certifying conditionally the proposed putative class. These formulaic statements which largely track the elements of proof for an FLSA misclassification and unpaid overtime claim are the exact type of statements courts in this district have found insubstantial and relied on to deny (or limit) certification.  *See Saarela*, 2014 WL 3408771, at *1 (finding allegations that "Union Colony failed to pay premium overtime pay for hours worked by Plaintiff and other employees in excess of twelve per day and/or forty per week" and that Union Colony "failed to calculate the overtime rate properly," "failed to pay 'straight time' for all non-overtime hours worked," and "required Plaintiff and other employees to pay the costs of uniforms and equipment when such costs should have been borne by Union Colony" were conclusory); *Bryant*, 2015 WL 3929663, at *4 (finding allegations regarding other drivers were conclusory and vague and limiting the class certification as a result).

**B.** **Stallings' Declaration contains hearsay and statements unsupported by personal knowledge.**

In his Declaration, Stallings makes a number of assertions needed for certification for which his primary support is his claim that he discussed the issue with unnamed "co-workers." He also makes a number of statements for which it is impossible for him to have personal knowledge. The Court should disregard statements based on hearsay or lacking in personal knowledge.

In Paragraphs 5, 8, 12, 13, 14, 15, 21, and 22, Stallings contends certain aspects of his engagement with Antero were the same for other independent contractors based at least in part on his "conversations with co-workers." *See* Declaration of Brett Stallings ("Stallings Decl.") ¶¶ 5, 8, 12, 13, 14, 15, 21, 22. He claims that other SCOs and PIs "performed the same or similar job duties" that he performed, worked similar hours as him, were also misclassified as independent contractors, regularly worked more than 40 hours a week, and did not have supervisory authority. *Id.* To the extent these statements are based on such conversations, they are hearsay and should not be considered by the Court. *See Saarela*, 2014 WL 3408771, at *1 (refusing to give weight to "Plaintiff's statements that he reached 'an understanding' of Union Colony's overtime policies based on "conversations with other security guards" and finding that those statements "essentially attempt[ed] to convert the hearsay statements of these unidentified employees into substantive evidence that Union Colony's pay policies are as [Plaintiff] described").

Similarly, in Paragraph 22, Plaintiff bases his belief that "there is a general interest among Solids Control Operators and Pipeline Inspectors in recovering back wages" solely on conversations with "several former co-workers [who] received a day-rate." Stallings Decl. ¶ 22. These statements are also hearsay and should not be considered.

Finally, Stallings makes blanket statements regarding all SCO and PI independent

contractors such as: "All of the other independent contractors in these positions were paid [on a 'take it or leave it' basis];" "all the other independent contractors working in the same positions were required to use a payroll processing company;" "Antero did not require . . . any of its Solids Control Operators and Pipeline Inspectors to significantly invest financially in our jobs;" and "Antero required all Solids Control Operators and Pipeline Inspectors to adhere to strict guidelines, expectations, and directives." *Id.* at ¶ 3, 4, 10, 20.  Plaintiff fails to provide any reasonable basis or explanation for why he might possess personal knowledge of such broad, sweeping claims.  As a result, the Court should disregard such statements as being made without personal knowledge.

### C.      Stallings' motion lacks sufficient evidentiary support.

Finally, Stallings fails to support the allegations he has made, and claims he has asserted, with any factual support other than his own Declaration.  Although he purports to have discussed a number of issues such as pay and working conditions in "conversations with [his] co-workers," he has failed to identify, let alone submit a declaration from, any such "co-worker" in support of his motion.  Similarly, he has failed to identify a single "co-worker" in his Initial Disclosures who might have knowledge of relevant facts, naming only "Putative Class Members" generally and claiming in a conclusory fashion that these unnamed individuals "are similarly situated to the named Plaintiff."   Plaintiff's Initial Disclosures, Exhibit C, § A, pg. 2.  Plaintiff's lack of evidentiary support corroborating his allegations and his failure to identify any other individual belies the contentions asserted in his Complaint and Motion.  Plaintiff must do more for his allegations to be deemed substantial.

After considering the deficiencies in his Complaint and Declaration, it becomes clear that Stallings' allegations fail to substantially allege that the claimed prohibited policy practices were

experienced, on the whole, classwide by all SCOs and PIs.  This Court should find the remaining allegations are not sufficient to qualify Plaintiff's contentions that he and the putative class members were together the victims of a single decision, policy, or plan as being "substantially" alleged.

**III.    Conditional class certification is not appropriate because Stallings has not shown that he is similarly situated to the putative class.**

Even assuming *arguendo* the allegations Plaintiff has set forth are deemed "substantial," Plaintiff has still failed to adequately explain how those allegations show he is similarly situated to putative class members or that members of the proposed class engaged in different positions are similarly situated to themselves.

**A.    PIs and SCOs are distinct and separate positions and not similarly situated to each other.**

Stallings improperly seeks to certify a class of two very different jobs: PIs and SCOs.[2]  It is unclear whether Stallings ever worked as an SCO, but assuming he did, there is no evidence that individuals who work in these two roles are similarly situated; to the contrary, the positions are dissimilar in multiple respects.

A plaintiff must also demonstrate the potential class members are similarly situated to each other.  *See, e.g., Rife v. Fronton Holdings, LLC*, 219 F. Supp. 3d 1256, 1261–62 (S.D. Fla. 2016); *see also Bryant*, 2015 WL 3929663, at *4 ("[T]he purposes of an FLSA collective action . . . are served here only if the Plaintiffs allege that the potential opt-in plaintiffs are similarly situated to themselves with regard to the circumstances of their working conditions.").  Thus, where a

---

[2] Plaintiff's Expedited Motion for Conditional Certification and Notice to Putative Class Members seeks to certify a class consisting of: "All current and former Solids Control Operators and Pipeline Instructors employees by, or working on behalf of, Antero Resources Corp., who were classified as independent contractors and paid a day-rate, at any time from _____, 2014 to the present."

proposed class includes multiple positions, a court should ensure the similarly situated requirement is met by examining the similarities and differences between each position. *Id.* (requiring plaintiff to demonstrate "he and the opt-ins are similarly situated with respect to job requirements"); *see also Dybach v. State of Fla. Dep't of Corr.*, 942 F.2d 1562, 1567–68 (11th Cir. 1991) ("[T]he district court should satisfy itself that there are other employees . . . who desire to 'opt-in' and who are 'similarly situated' with respect to their job requirements and . . . pay provisions."). "Although the similarly situated standard is a low threshold, a showing of similarity requires more than generalized allegations." *Robinson v. Dolgencorp., Inc.*, No. 5:06-cv-122-Oc-10GRJ, 2006 WL 3360944, at *5 (M.D. Fla. Nov. 13, 2006).

For example, in *Rife*, the Court denied conditional certification because the plaintiff failed to demonstrate how individuals performing in different positions contained in the proposed class definition were similarly situated to one another. In particular, the plaintiff failed to "to describe any of [the positions'] job requirements" and as a result, the court found "it [was] impossible . . . to determine whether they [were] similarly situated to Plaintiff." *Rife*, 219 F. Supp. 3d at 1262; *see also Romero v. H.B. Auto. Grp., Inc.*, No. 11 CIV. 386 CM, 2012 WL 1514810, at *14 (S.D.N.Y. May 1, 2012) (denying conditional certification for a proposed class of two, distinct positions, in part, because the plaintiff "made no showing that the work performed by all potential opt-ins is similar to her own" and because the court found "Plaintiff's own job duties, first as a salesperson and later as an Inventory Manager, are very different").

These requirements are not met in this case vis-à-vis Stallings proposed class. As an initial matter, Antero does not know who perform SCO tasks since the solids control function is outsourced in its entirety to third parties. Those companies – which are operating companies, not

staffing companies – provide equipment, operators, and services to Antero  which are invoiced to Antero as one job. *See*  Ex. A and attachments thereto.  This stands in contrast to the PI role, where Antero's engagement of the individual inspectors was typically more direct.

In addition, the actual job functions are quite different.  SCOs operate equipment either separating waste from drilling fluid or transporting cuttings waste, while PIs inspect the construction of pipelines.  *See* Ex. A, ¶ 4, 7; Ex. B, ¶ 3.  As a result, each job requires different skill sets and levels of education.  *See* Ex. A, ¶ 4, 7; Ex. B, ¶ 3.  Moreover, the services provided to Antero by SCOs and PIs are provided for different business units of the company and in connection with different aspects of the production process: SCOs are utilized in drilling and PIs are utilized in construction.  *See* Ex. A, ¶ 4, 7; Ex. B, ¶ 3.  In other words, SCOs and PIs do not work at the same locations or have the same or similar reporting structures.  *See* Ex. A, ¶ 4, 7; Ex. B, ¶ 4.  In short, these positions are unrelated.

For these reasons, Stallings has failed to show that Plaintiff and other putative class members are similarly situated to one another and the proposed class.  Like the plaintiff in *Rife*, Stallings has provided no information on which the Court can use to determine similarity.  And moreover, Defendant has shown that the two positions' duties and responsibilities do no overlap in any meaningful manner.  Accordingly, the Court should deny certification of the proposed class.

But even if the Court is inclined to grant conditional certification, the Court should at a minimum narrow Stallings proposed class to one position or create subclasses and evaluate each subclass separately.  If a class is overbroad, district courts possess discretion to re-shape, and divide, classes in an appropriate manner.  *See, e.g.*, *Shipes v. Amurcon Corp.*, No. 10-14943, 2012 WL 995362, at *5–6 (E.D. Mich. Mar. 23, 2012) (collecting cases).  The Court should do so here

due to the dissimilarity of the positions.[3]

### B.   Significant variance exists among the different types of PIs.

Moreover, Plaintiff is not similarly situated to putative class members with respect to the analysis the Court would engage in to determine whether the workers are independent contractors (i.e. the "economic realities" test) because of the significant variance among PIs.

Although the standard governing first-stage certification is a lenient one, *see Thiessen*, 267 F.3d at 1102, it should not be treated as a rubber stamp of approval.  Certification is not appropriate where "the record shows that determining whether other potential plaintiffs are similarly situated would require a fact-specific and individualized inquiry."  *Aguirre v. SBC Commc'ns, Inc.*, No. CIV.A. H-05-3198, 2006 WL 964554, at *6-7 (S.D. Tex. Apr. 11, 2006) (collecting cases).

Further, in cases where an independent contractor is claiming employee status, a court should consider the sufficiency of a plaintiff's allegations regarding his independent-contractor status, despite being unable to weigh the evidence presented.  *See Andel v. Patterson-UTI Drilling Co., LLC*, 280 F.R.D. 287, 289 (S.D. Tex. 2012) ("[W]hen considering a motion for conditional certification of a collective action based on allegations of independent contractor misclassification, a court must analyze whether the putative collective action members are similarly situated with respect to the analysis it would engage in to determine whether the workers are employees or independent contractors." (emphasis added and internal quotation marks omitted)); *see also Sanchez v. Simply Right, Inc.*, No. 15-CV-00974-RM-MEH, 2017 WL 1352273, at *6 (D. Colo. Apr. 13, 2017), *report and recommendation adopted in part, rejected in part*, No. 15-CV-00974-

---

[3] The Court should also limit any certification to the two-year limitations period, as opposed to the three-year limitations period for willful violations, because Plaintiff has made no factual allegations from which willfulness can be inferred by the Court.  *See* Compl. ¶ 52 (Plaintiff's only reference to willfulness); *Cohen v. Allied Steel Bldgs., Inc.*, 554 F. Supp. 2d 1331, 1335 (S.D. Fla. 2008); *see also Colson v. Avnet, Inc.*, 687 F. Supp. 2d 914, 921 (D. Ariz. 2010).

RM-MEH, 2017 WL 2230079 (D. Colo. May 22, 2017) (analyzing "whether Plaintiffs and putative collection action members are similarly situated—i.e., whether they have asserted substantial allegations that they together were victims of minimum wage violations (via 'piggybacking') and/or of overtime violations" in order to determine whether to recommend certification).

Although the Court cannot weigh the merits of Stallings' allegations, it can, and should, consider the sufficiency of his allegations. In analyzing the sufficiency of the allegations in these cases, even at the notice stage, courts look to the factors of the "economic realities" test to determine whether the plaintiff and putative class members are similarly situated. *See Bryant*, 2015 WL 3929663, at *4; *Christianson v. NewPark Drilling Fluids, LLC*, No. CIV.A. H-14-3235, 2015 WL 1268259, at *3 (S.D. Tex. Mar. 19, 2015). "In applying the economic realities test, courts generally look at (1) the degree of control exerted by the alleged employer over the worker; (2) the worker's opportunity for profit or loss; (3) the worker's investment in the business; (4) the permanence of the working relationship; (5) the degree of skill required to perform the work; and (6) the extent to which the work is an integral part of the alleged employer's business." *Baker v. Flint Eng'g & Const. Co.*, 137 F.3d 1436, 1440 (10th Cir. 1998).

For example, in *Christianson*, the defendant classified plaintiff as an independent contractor technician. *Id.* at *1. The plaintiff sought conditional certification of a class of technicians who were allegedly misclassified as independent contractors and paid day rates. Id. Applying the two-step *ad hoc* approach, the *Christianson* court first sought to determine whether the plaintiff was similarly situated with the putative class members. *Id.* at *2–3. Like Stallings, the plaintiff argued that the court should not consider the "economic realities" test at the notice stage. *Id.* at *3. In rejecting the plaintiff's assertion, the court noted that an evaluation of whether

the various independent contractors were similarly situated with respect to the economic realities test was appropriate, given the individualized nature of the defendant's independent-contractor practices. *Id.* at *3–4. Along that line, the court noted that it "is not applying the economic realities test at [the notice] phase to decide whether workers . . . were improperly classified as independent contractors. . . . Instead, the Court is only evaluating whether Plaintiff has demonstrated that he and the putative class members are similarly situated for purposes of applying the economic realities test at the appropriate phase of this case in the future." *Id.* at *4 (emphasis added); *see also Bryant*, 2015 WL 3929663, at *4 (looking to the "economic realities" test to the analyze whether the plaintiffs allegations were substantial).

Testing the sufficiency of a plaintiff's allegations through the "economic realities" advances the policies underlying §216(b): to seek an "efficient resolution of common claims," *Bryant*, 2015 WL 3929663 at *4, and to "lower [the] individual costs associated with litigation," *id.*, by providing courts the "discretion to deny certification for trial management reasons," *Thiessen*, 267 F.3d at 1105. Put another way, when confronted with a putative class of independent contractors with varying circumstances and economic realities for whom certification is inappropriate, a court is not compelled to grant conditional certification merely because the plaintiff has a lesser burden at the notice stage. Ultimately, the "need for individualized analysis eviscerates all notions of judicial economy that would otherwise be served by conditional class certification." *Christianson*, 2015 WL 1268259 at *4 (quoting *Demauro v. Limo, Inc.*, 2011 WL 9191, *3–4 (N.D. Fla. Jan. 3, 2011)) (internal quotation marks omitted).

Applying these principles here, Plaintiff is not similarly situated to putative class members with respect to the analysis the Court would engage in to determine whether the workers are

independent contractors (i.e. the "economic realities" test) because of the significant variance among PIs.  Given the differences in how Antero treats its PIs, individual facts will inevitably predominate at the decertification stage, thereby rendering conditional certification inefficient and unnecessary.

"Pipeline Inspector" is an umbrella term under which various and different types of inspectors can be classified, such as welding inspectors or coating inspectors.  *Id.* at ¶ 4.   Certain "Pipeline Inspectors" might have specialties and different skill sets based on those specialties.  *Id.* This means that their day-to-day responsibilities and tasks performed may vary substantially based on what type of PI they are.  *Id.*  This may also affect their reporting structure.  *Id.*  In that same vein, although PIs generally report to the Chief Inspector, depending on if they have a specialty, certain PIs may report directly to the PM or the head of another department.  *Id.*

Antero's method used to engage inspectors differs from project to project.  Ex. A, at ¶ 3. For example, each PM is responsible for engaging various types of inspectors for the projects they manage and each PM determines the number and type of each inspector needed for the project based on the individual project's need.[4]  *Id.*  The need for various inspectors for each project may also vary during the course of the project itself as certain aspects of each project are completed. *Id.*  And because each inspector is engaged for a specific project, the duration of engagement is limited by the length of the project.  *Id.*  Thus, the number and type of, and duration of engagement for, each inspector varies from project to project.

The specific means of engagement also varies from project to project and PM to PM.  For

---

[4] Although Antero controls generally the number and type of contractors engaged on various projects, Antero does not control the substantive work performed by inspectors, instead relying on each inspector's experience, expertise, and various skill sets to perform their job functions.

example, certain inspectors are engaged through larger consulting companies that provide Antero with multiple contractors.  *Id.* at ¶ 5.  Others are engaged directly through companies that they own and operate.  *Id.*  Antero's onboarding process for contractors brought on through large consulting companies is considerably more streamlined, with less rigorous processes surrounding master services agreements.  *Id.*  As a result, the specific mean of engagement for each contractor varies based on each contractor's particular circumstances.

It therefore follows that the inspectors' opportunities for profit vary depending on whether they are part of an individual company or part of a larger consulting firm.  For example, the larger firms typically retain a percentage of the compensation they are paid by Antero for each individual contractor provided.  *Id.* at ¶ 6.  Individuals who are engaged through their own companies retain the entire fee paid by Antero for the services they provided through that company.  *Id.*  Thus, an independent contractor's ability to realize revenue from the jobs he or she performs for Antero depends on the type of company for whom the contractor works.

Finally, the degree of skill and initiative of the individual contractors also differ depending on the companies that Antero engages.  Certain consulting companies provide contractors who have a wealth of experience; others provide less experienced contractors.  *Id.* at ¶ 7.  An inspector's level of experience and knowledge is critical, and has practical effects on the job the contractor is able to perform for Antero.  *Id.*  For example, certain inspectors with exceptional amounts of experience may provide services as Chief Inspectors.  Chief Inspectors have increased oversight compared to a typical PI, and are responsible for overseeing all different aspects of inspections. As a result of the increased duties, Antero pays companies a higher amount for PIs who perform work as Chief Inspectors.  *Id.*

Viewing the above examples, it becomes clear that an analysis of whether Antero's inspectors are similarly situated to Plaintiff will necessarily devolve into a person-by-person examination of each contractor's individual circumstances; therefore conditional certification is not appropriate.[5]  *Christianson*,  2015 WL 1268259 at *4; *Andel*, 280 F.R.D. at 290 (rejecting conditional certification for putative class of independent contractors due to the necessity for "individualized analysis of each putative plaintiff" at the decertification stage).

**V.      Alternatively, Stallings' proposed form of Notice and Consent is deficient.**

Because Stallings' proposed form of notice and consent is overbroad in its language, the information it seeks, and its proposed methods of dissemination, Antero objects to the notice on the following grounds.

**A.      The proposed Notice is misleading as it fails to apprise putative class members of important rights and obligations.**

As an initial matter, Antero objects to Stallings' addressing the notice to "All current and former Solids Control Operators and Pipeline Inspectors *employed by* . . .  Antero," as it assumes as a legal matter that Antero employed any members of the putative class.  Antero requests that all references to "employee" or "employment" be stricken and be replaced with "independent contractor" or "Solids Control Operators and Pipeline Inspectors."

Further, Stallings' proposed notice does not adequately put putative class members on notice of their potential liability for costs.  As other districts in this circuit have noted, "an award of costs to a prevailing defendant in an FLSA case is clearly possible[,]" and therefore it is

---

[5] Again, despite Stallings' assertion to the contrary, Antero is *not* requesting the Court apply the economic realities test, or issue any ruling on the merits, at this time.  Rather, Antero believes that, due to the differences that are readily apparent at this early stage, conditional certification is both improper and impractical, and respectfully requests the Court deny Stallings' motion.

appropriate to put opt-in plaintiffs on notice of such risks. *Allen v. Mill-Tel, Inc.*, No. 11-1143-EFM-KGS, 2012 WL 2872160, at *7 (D. Kan. July 12, 2012). Accordingly, Antero requests that the notice be clarified to state that, in the event Antero is the prevailing party, plaintiffs may be assessed certain court costs and expenses.

Additionally, the notice does not make clear that, in the event of settlement, a portion of money paid to the putative class may be paid to plaintiff's attorneys to satisfy their fees. Antero requests the inclusion clarifying language to reflect such potential payments. *See May v. E & J Well Serv., Inc.*, No. 14-CV-00121-RBJ, 2014 WL 2922655, at *2 (D. Colo. June 27, 2014) (noting that "[a] discussion of lawyers' fees should include . . . a clear indication that any attorney's fees must be approved as reasonable by the Court, and a clarification that attorney's fees and expenses may be deducted from any money obtained on behalf of the class depending on the outcome of the action (settlement versus success at trial). . . . Those fees might be paid out of the plaintiffs' award, even if they are not paid out of pocket.").

Finally, the notice as written provides that all putative class members may return their consent forms directly to plaintiff's counsel, but does not state that the putative class members may also return their consent forms directly to the court. Antero requests the notice be reformed to include this language. *See, e.g.*, *Tolentino v. C & J Spec-Rent Servs. Inc.*, 716 F. Supp. 2d 642, 655 (S.D. Tex. 2010).

### B. The information Stallings requests and his proposed methods of dissemination are overbroad and largely unjustified.

Stallings requests Antero provide the names, addresses, telephone numbers, and e-mail addresses (both personal and work) of all putative class members. Further, he requests that he be able to send notice both by First Class United States mail and e-mail, and for the court to order

17

Antero to post the notice at all job sites for 60 days.  On top of that, he requests the ability to send reminder notice by both first class mail and e-mail, and to contact certain putative class members by telephone to ensure they received their notice.  "Courts generally approve only a single method for notification unless there is a reason to believe that method is ineffective."  *Wolfram v. PHH Corp.*, No. 1:12-CV-599, 2012 WL 6676778, at *4 (S.D. Ohio Dec. 21, 2012).  In short, Stallings is asking for multiple bites at the apple when he is entitled to one.

> Regarding the optimal method of notice, courts in this district have unambiguously noted:
>
> [N]otification by first class mail is the preferred method in the unique circumstances of class certification notification.  Such a mailing process ensures the integrity of a judicially controlled communication directed to the intended audience.  In contrast, ***electronic communication inherently has the potential to be copied and forwarded to other people via the internet with commentary that could distort the notice approved by the Court***. Electronic mail heightens the risk that the communication will be reproduced to large numbers of people who could compromise the integrity of the notice process. In addition, email messages could be forwarded to nonclass members and posted to internet sites with great ease. ***First class mail ensures, at the outset, that the appropriately targeted audience receives the intended notification and maximizes the integrity of the notice process.***

*Reab v. Elec. Arts, Inc.*, 214 F.R.D. 623, 630–31 (D. Colo. 2002) (emphasis added); *see also Parks v. Eastwood Ins. Servs., Inc.,* No. SACV02507GLTMLGX, 2002 WL 34370244, at *5 (C.D. Cal. July 29, 2002) ("the production of telephone numbers for all putative class members is unwarranted and presents a greater risk of improper solicitation").  Although Stallings cites to certain decisions granting dissemination of e-mail notice in the context of oilfield workers, unlike those cases, he has not provided any proof, beyond self-serving statements in his Declaration, that first class mail is insufficient for notice purposes.  Given that Stallings has requested a 60-day opt-in period, there is no reason to believe first class mail will not reach the putative class members within the notice period.

Finally, the extensive amount of personal information Stallings requests is inappropriate, as it implicates potential privacy and identity theft concerns.  *See Garcia v. TWC Admin., LLC*, No. SA:14-CV-985-DAE, 2015 WL 1737932, at *4 (W.D. Tex. Apr. 16, 2015) (denying plaintiff's request for, *inter alia*, phone numbers, e-mail addresses, and dates of employment and noting "names and addresses are sufficient to ensure that notice is received.").

Next, without any supporting argument or justification, Stallings attempts to insert a provision into the proposed notice schedule that would require Antero to post a copy of the notice at all job sites.  Apart from the fact that such a posting would be cumulative and overreaching, and that Stallings was engaged only in Ohio, Stallings' failure to provide any justification for its necessity provides the court with grounds to strike the clause in its entirety.  *See Allen*, 2012 WL 2872160, at *8 ("Defendant objects to this request, stating that Plaintiffs have not established the necessity for such a [posted] notice. The Court agrees, and finds that requiring such a posting would be cumulative and overreaching in the present case.").

Similarly, Stallings' proposed schedule contains a provision granting a reminder notice to be issued after 30 days, but his brief provides no argument or justification for such notice. Consequently, as Stallings has not argued that extenuating circumstances necessitate a reminder notice, such a notice is unwarranted.  *E.g., Graham v. Jet Specialty, Inc.*, No. MO-15-CV-135-DAE, 2016 WL 154846, at *8 (W.D. Tex. Jan. 11, 2016), *report and recommendation adopted,* No. MO-15-CV-135-DAE, 2016 WL 7479956 (W.D. Tex. May 11, 2016); *see also Witteman v. Wisconsin Bell, Inc.*, No. 09-CV-440-VIS, 2010 WL 446033, at *3 (W.D. Wis. Feb. 2, 2010) (noting that "reminder [notice] is unnecessary and potentially could be interpreted as encouragement by the court to join the lawsuit").  In light of the above, Antero requests the court

19

revise the deficient language of Stallings' notice, and permit dissemination via the neutral and guarded method of first class mail.

## CONCLUSION

For the foregoing reasons, Antero respectfully requests the court deny Plaintiff's Expedited Motion for Conditional Certification and Notice to Putative Class Members.

Respectfully submitted,

*/s/ Vanessa Griffith*

VANESSA GRIFFITH
Texas Bar No. 00790469
VINSON & ELKINS L.L.P.
2001 Ross Avenue, Suite 3700
Dallas, Texas 75201
Telephone:  214.220.7713
Facsimile:   214.999.7713
email:  vgriffith@velaw.com

JIM THOMPSON
Texas Bar No. 19918500
VINSON & ELKINS L.L.P.
1001 Fannin Street, Suite 2500
Houston, Texas 77002
Telephone:  713.758.2646
Facsimile:   713.615.5129
email:  jthompson@velaw.com
email:  sbecker@velaw.com

EDWIN P. ARO
ARNOLD & PORTER KAYE SCHOLER
370 17th Street, Suite 4400
Denver, Colorado 80203
Telephone: 303-863-2380
Facsimile: 303-832-0428
Email: ed.aro@apks.com

**ATTORNEYS FOR DEFENDANT,
ANTERO RESOURCES CORPORATION**

## <u>CERTIFICATE OF SERVICE</u>

I certify that on December 22, 2017, a true and correct copy of the foregoing document was served by the notice of electronic filing generated by the Court's CM/ECF system and was automatically copied to Plaintiff through the Court's electronic filing system.


   */s/ Vanessa Griffith*
Attorney for Defendant