UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLORADO

Civil Action No. 1:17-cv-01939-RM-NYW

BRETT STALLINGS, individually and as on behalf of all others similarly situated,

    Plaintiff,

v.

ANTERO RESOURCES CORP.

    Defendant.

## ORDER AND RECOMMENDATION OF UNITED STATES MAGISTRATE JUDGE

Magistrate Judge Nina Y. Wang

This matter comes before the court on Plaintiff Brett Stallings's ("Plaintiff" or "Mr. Stallings") Expedited Motion for Conditional Certification and Notice to Putative Class Members ("Motion" or "Motion for Conditional Certification"), filed November 27, 2017. [#23]. The undersigned considers the Motion pursuant to 28 U.S.C. § 636(b), the Order Referring Case dated August 11, 2017 [#6], and the Memorandum dated November 28, 2017 [#24]. Having reviewed the Motion and associated briefing, the applicable case law, and the entire docket, this court concludes that oral argument will not materially assist in the resolution of this matter. For the reasons stated herein this court respectfully RECOMMENDS that the Motion for Conditional Certification be GRANTED IN PART and DENIED IN PART.

## BACKGROUND

The following facts are drawn from the operative Complaint and are taken as true for the purposes of the instant Motion. Mr. Stallings is a former employee of Defendant Antero Resources Corporation ("Defendant" or "Antero"), having worked as a Solids Control Operator ("SCO") and Pipeline Inspector ("PI") from "approximately January 2014 until October 2015."

[#1 at ¶ 7, 42; #23-2 at ¶ 2]. Antero is a Colorado corporation engaged in "natural gas produc[tion] in the Marcellus and Utica shale fields in Ohio and West Virginia." [#32 at 2]; *see also* [#1 at ¶ 9, 16]. Plaintiff alleges while working as a SCO and PI Antero improperly classified him and all other SCOs and PIs as independent contractors. *See* [#1 at ¶ 4, 7–8, 42; #23-2 at ¶ 2]. In doing so, Antero did not pay Mr. Stallings, or any SCO or PI, overtime compensation for hours worked in excess of forty hours per week. *See* [#1 at ¶¶ 3, 7–8, 17, 46, 51, 56–57; #9 at ¶ 46; #23-2 at ¶¶ 8, 13–15, 17]; *cf.* [#32-1 at ¶¶ 4–5, 7; #32-2 at ¶ 6]. Instead, Antero subjected such workers to its "day-rate system" under which Antero paid them "a flat amount for each day worked," regardless of the number of hours worked per day and/or week. *See* [#1 at ¶¶ 4, 17, 46, 50, 56–57; #9 at ¶ 18; #23-2 at ¶¶ 3, 13]. Mr. Stallings further alleges that he did not receive a guaranteed salary or weekly compensation, he received compensation only for the days actually worked. *See* [#1 at ¶¶ 18, 56; #9 at ¶ 18; #23-2 at ¶¶ 3, 7].

Plaintiff then initiated this matter, asserting violations of section 7 of the Fair Labor Standards Act ("FLSA"), 29 U.S.C. § 207, against Antero. *See generally* [#1]. Plaintiff alleges Defendant improperly classifies SCOs and PIs as independent contractors to avoid paying such workers overtime compensation for hours worked in excess of forty hours per week. *See* [*id.* at ¶ 51]. Plaintiff brings this claim on behalf of himself and all similarly situated SCOs and PIs, and seeks "overtime wages under the FLSA in an amount equal to 1.5 times their rate of pay, plus liquidated damages, attorney's fees, and costs." [*Id.* at ¶ 53]. Antero filed its Answer to Plaintiff's Complaint on September 12, 2017. [#9].

The court entered a Scheduling Order in this matter, setting November 13, 2017 as the deadline by which Plaintiff was to file his Motion for Conditional Certification, if any; June 18, 2017 as the discovery deadline; and July 20, 2018 as the deadline by which Antero was to file its

Motion to Decertify the Collective Action, if any. *See* [#15; #16]. Following a two-week extension, Plaintiff filed the instant Motion on November 27, 2017. [#23]. Mr. Stallings requests conditional certification for the following potential opt-in plaintiffs:[1]

> All current and former Solids Control Operators and Pipeline Inspectors employed by, or working on behalf of, Antero Resources Corp., who were classified as independent contractors and paid a day-rate, at any time from [the date three years back from the date that any Court-approved Notice and Consent form is distributed to potential class members],[] to present.

[*Id.* at 4 (brackets added) (footnote omitted)]. Plaintiff avers that such workers are similarly situated for purposes of conditional certification. *See generally* [#23].

Antero opposes conditional certification, arguing that Mr. Stallings fails to provide substantial allegations that he and putative collective action members are similarly situated, given that the job duties and responsibilities under the umbrella categorizations of SCO and PI differ significantly. [#32]. In particular, Antero contends that, with respect to the SCOs, it engages other companies to manage the waste disposal process, and that it did not employ or engage individuals as SCOs. [#32 at 2–3]. Antero argues, in the alternative, that any collective action that is conditionally certified must be narrowed in scope or divided into subclasses. [#32 at 2]. The Motion for Conditional Certification is now ripe for Recommendation.

## LEGAL STANDARDS

### I. The Fair Labor Standards Act

The FLSA governs the payment of minimum wages and overtime compensation between an employer and its employees. *See* 29 U.S.C. §§ 206–207. Under the statute, a covered

---

[1] Often, courts and parties refer to the potential opt-in plaintiffs as a "class," but recent case law in this District has discussed in detail the difference between a collective action under the FLSA and a class action under Rule 23 of the Federal Rules of Civil Procedure. *See e.g.*, *Oldershaw v. DaVita Healthcare Partners, Inc.*, 255 F. Supp. 3d 1110 (D. Colo. 2017). Accordingly, this court refers to the potential plaintiffs in any collective action as "potential opt-in plaintiffs," as opposed to a "collective class" in an effort to be more precise.

employer must pay its employees for the time that it employs them; and the FLSA generally requires covered employers to compensate employees for work in excess of forty hours in a work week. *See* 29 U.S.C. §§ 206(a), 207(a). The required overtime compensation is one and one-half times an employee's "regular rate" of pay. 29 U.S.C. § 207(e). The FLSA defines an "employer" as "any person acting directly or indirectly in the interest of an employer in relation to an employee." 29 U.S.C. § 203(d). The FLSA "defines the verb 'employ' expansively to mean 'suffer or permit to work.'" *Nationwide Mut. Ins. Co. v. Darden,* 503 U.S. 318, 326 (1992) (quoting 29 U.S.C. § 203(g)).

Section 216(b) of the FLSA authorizes private individuals to recover damages for violations of minimum wage and overtime provisions. It provides in relevant part that "[a]n action to recover the liability [for unpaid overtime compensation, retaliation and liquidated damages] may be maintained against any employer ... in any Federal or State court of competent jurisdiction by any one or more employees for and in behalf of himself or themselves and other employees similarly situated." 29 U.S.C. § 216(b). The FLSA thus provides plaintiffs the opportunity to proceed collectively, which allows "plaintiffs the advantage of lower individual costs to vindicate rights by the pooling of resources." *Hoffmann-La Roche Inc. v. Sperling*, 493 U.S. 165, 170 (1989) (interpreting the ADEA, which explicitly incorporates the collective action provisions of the FLSA). Plaintiffs who wish to participate in an FLSA collective action must opt in to the action. 29 U.S.C. § 216(b) ("No employee shall be a party plaintiff to any such action unless he gives his consent in writing to become such a party and such consent is filed in the court in which such action is brought."). *See also In re American Family Mutual Insurance Co. Overtime Pay Litigation*, 638 F. Supp. 2d 1290, 1298 (D. Colo. 2009).

## II. Conditional Certification

In *Thiessen v. General Electric Capital Corp.*, the United States Court of Appeals for the Tenth Circuit ("Tenth Circuit") approved a two-step process, known as an *ad hoc* approach, for determining whether putative opt-in plaintiffs are similarly situated to the named plaintiff. 267 F.3d 1095, 1105 (10th Cir. 2001). Pursuant to this approach, the trial court determines at the initial "notice stage" whether the plaintiff has asserted "substantial allegations that the putative class members were together the victims of a single decision, policy, or plan." *Id.* at 1102. During the second stage in the *ad hoc* approach, after discovery has concluded and often prompted by a motion to decertify, the court applies a stricter standard to determine whether the action should continue as a collective action. In particular, the court must evaluate the "disparate factual and employment settings of the individual plaintiffs; the various defenses available to defendant which appear to be individual to each plaintiff; fairness and procedural considerations; and whether plaintiffs made [any required filings] before instituting suit." *Id.* at 1103 (citing *Vaszlavik v. Storage Tech. Corp.*, 175 F.R.D. 672, 678 (D. Colo. 1997)). Numerous courts in this District have followed this *ad hoc* approach in determining whether plaintiffs can move forward collectively under the FLSA. *See, e.g.*, *Baldozier v. American Family Mut. Ins. Co.*, 375 F. Supp. 2d 1089, 1092 (D. Colo. 2005); *but see Turner v. Chipotle Mexican Grill, Inc.*, 123 F. Supp. 3d, 1300, 1309 (D. Colo. 2015) (rejecting the two-step process in favor an approach that allowed "workers bringing the same statutory claim against the same employer to join as a collective, with the understanding that individuals may be challenged and severed from the collective if the basis for their joinder proves erroneous.").[2]

---

[2] The Tenth Circuit concluded that the "spurious" approach applied in *Turner* was not such a gross abuse of discretion to warrant mandamus relief, but noted that it took no position as to the merits of such approach. *In re Chipotle Grill, Inc.*, No. 17-1028, 2017 WL 4054144, at *3 & n.1

The *ad hoc* approach is a case-by-case determination. *Thiessen*, 267 F.3d at 1105. Even in light of factually similar cases, Mr. Stallings bears the burden of setting forth substantial allegations that he and the other SCOs and PIs in this action are similarly situated for the purpose of conditional certification. *See Eagle v. Freeport-McMoran, Inc.*, No. 2:15-cv-00577-MV-SMV, 2016 WL 7494278, at *2 (D.N.M. Aug. 3, 2016) ("Conditional certification in the notice stage . . . is by no means automatic."). At this "notice stage," the court may rely on the allegations of the complaint and any supporting affidavits filed by the plaintiff. *Brown v. Money Tree Mortgage, Inc.*, 222 F.R.D. 676, 680 (D. Kan. 2004). *See also Smith v. Pizza Hut, Inc.*, No. 09-CV-01632-CMA-BNB, 2012 WL 1414325 (D. Colo. Apr. 21, 2012). Further, "the court does not resolve factual disputes, decide substantive issues going to the ultimate merits, or make credibility determinations." *Bradford v. Logan's Roadhouse, Inc.*, 137 F. Supp. 3d 1064, 1072 (M.D. Tenn. 2015) (citation and internal quotation marks omitted). Although this burden is "modest, it is not non-existent, and it cannot be satisfied simply by unsupported assertions." *Korenblum v. Citigroup, Inc.*, 195 F. Supp. 3d 475, 480 (S.D.N.Y. 2016) (citations and internal quotation marks omitted). Courts deny conditional certification in instances where the complaint is wholly conclusory in nature, the supporting affidavit relies on hearsay from unidentified sources, and the nature of the violation is rendered ambiguous by the particular circumstances of the only named plaintiff. *See, e.g.*, *Saarela v. Union Colony Protective Servs., Inc.*, No. 13-cv-01637-MSK-MJW, 2014 WL 3408771 (D. Colo. July 14, 2014) (dismissing motion for conditional certification without prejudice and instructing the plaintiff he could renew his request upon a more substantial showing that the defendant company's alleged failure to pay overtime to plaintiff was indicative of a policy that applied equally to other similarly-situated employees).

---

(10th Cir. Mar. 27, 2017). Here, the Parties proposed the use of the two-stage *ad hoc* approach, and that is the approach this court will employ.

However, as noted by the presiding judge, the Honorable Raymond Moore, there is no heightened pleading standard or evidentiary requirement at the conditional certification stage. *Sanchez v. Simply Right, Inc.*, No. 15-CV-00974-RM-MEH, 2017 WL 2230079, at *3 (D. Colo. May 22, 2017). Courts within the Tenth Circuit have relied upon a plaintiff's discussions with others to find that there are substantial allegations that the plaintiff(s) and the putative opt-in plaintiffs were together the victims of a single decision, policy, or plan. *See e.g.*, *Murphy v. Allstaff Medical Resources, Inc.*, No. 16-cv-2370-WJM-MEH, 2017 WL 6945036, at *2 (D. Colo. June 13, 2017); *Sharp v. CGG Land (U.S.) Inc.*, No. 14-cv-0614-CVW-TLW, 2015 WL 222486, at *2 (N.D. Okla. Jan. 14, 2015). Thus, the standard for conditional certification has been described as a "minimal burden," *see Lsysyj v. Milner Distrib. Alliance, Inc.*, No. 13cv01930-RM-MJW, 2014 WL 273214 (D. Colo. Jan. 24, 2014), and its application "typically results in class certification." *Brown*, 222 F.R.D. at 679.

## ANALYSIS

Mr. Stallings moves for conditional certification of a collective action that includes SCOs and PIs "employed by, or working on behalf of, Antero during the past three years who Antero classified as independent contractors and paid a day-rate[.]" [#23 at 2]. Plaintiff argues that he satisfies his initial burden of demonstrating that he and all other SCOs and PIs are similarly situated, because they all: (1) shared the primary job duties of "performing manual labor in the oilfield, operating oilfield equipment, and reporting to Antero supervisors"; (2) reported directly to Antero and/or its clients; (3) received only a day-rate set by Antero with no overtime compensation for hours worked in excess of forty, despite "working over 84 hours in a week"; (4) were classified as independent contractors; (5) relied on Antero and/or its clients to set their work schedules and provide all the necessary equipment needed for their projects; and (6) were

7

required to adhere to Antero's directives for completing projects. [*Id.* at 5]. Mr. Stallings continues that courts routinely grant conditional certification in similar actions, and asserts that his proposed Notice and means of delivery via first class mail, email, and text message to potential opt-in plaintiffs are necessary under the circumstances, given the fact that the members of the potential collective are often in the field, away from their permanent addresses for significant periods of time. [*Id.* at 14–17].

Antero opposes conditional certification for several reasons. First, Defendant contends that Mr. Stallings fails to provide substantial allegations that he and all SCOs and PIs are similarly situated, because his Complaint contains largely conclusory allegations, his Declaration relies on hearsay and statements unsupported by personal knowledge, and his Motion for Conditional Certification lacks sufficient evidentiary support. *See* [#32 at 4–8]. Second, Antero argues that Plaintiff fails to establish how SCOs and PIs are similarly situated, given that these are umbrella categorizations that cover several distinct jobs. [*Id.* at 8–11]. Third, and relatedly, Antero urges the court to find that Mr. Stallings fails to plead allegations sufficient to pass the economic realities test even at this initial phase, because a determination of whether SCOs and PIs are similarly situated will require a fact-specific inquiry that is not satisfied by his pleadings and Declaration. [*Id.* at 11–16]. Alternatively, Antero argues that, should the court conditionally certify a collective action, it should do so by creating sub-categories of putative opt-in plaintiffs, not the broad parameters requested by Plaintiff, and the court should amend the proposed Notice and its means of delivery. *See* [*id.* at 16–20]. The court notes that Antero's arguments, except whether Plaintiff has sufficiently pled substantial allegations of being similarly situated to his proposed collective, attack the merits of Plaintiff's FLSA claim or require this court to make factual or credibility determinations. Such determinations are not appropriate in the context of

conditional certification. Therefore, the court's analysis will consider only whether Plaintiff pleads substantial allegations that he and the SCOs and PIs were together the victims of a single decision, policy, or plan, thereby satisfying the "similarly situated" requirement to justify conditional certification.

I.  **Are There Substantial Allegations to Support a Finding that Plaintiff is Similarly Situated to Potential Opt-In Plaintiffs?**

To determine whether there are substantial allegations to support a finding that Mr. Stallings and potential opt-in plaintiffs are similarly situated, such that they are subject to a single decision, policy, or plan, this court looks to the Complaint [#1] and Mr. Stallings's Declaration offered in support of the Motion for Conditional Certification [#23-2]. Mr. Stallings worked for Antero from approximately January 2014 to October 2015 as a SCO and PI; as such, his primary job duties, allegedly consistent with all other SCOs and PIs, included "performing manual labor in the oilfield, operating oilfield equipment, and reporting daily activities to Antero supervisors." [#1 at ¶¶ 18–19, 41–42]; *see also* [#23-2 at ¶¶ 2, 11–12]. As a SCO and PI, Antero classified Mr. Stallings as an independent contractor, paying him a day-rate for the days actually worked, typically twelve-hour shifts per day "for weeks at a time," and never paid him overtime compensation for hours worked in excess of forty. *See* [#1 at ¶¶ 2–4, 8, 14, 17, 20; #23-2 at ¶¶ 2–3, 7, 8, 13, 14, 17]. Further, Antero dictated Mr. Stallings's day-to-day activities while working on a project, including the scheduling of his shifts and the setting of day-rate compensation; it also provided (or its clients provided) all the equipment needed for the project, and it prohibited Mr. Stallings from "negotiat[ing] additional work" from Antero's clients. *See* [#1 at ¶¶ 22, 24–30, 33, 34, 36, 37, 38, 41; #23-2 at ¶¶ 3, 6, 8, 9, 10, 19, 20].

The Complaint alleges Mr. Stallings and other SCOs and PIs "regularly worked for Antero in excess of 40 hours each week[,]" but "never received overtime for hours worked in

excess of 40 hours in a single workweek[;]" instead, Antero paid Mr. Stallings and "other workers like him" a "daily rate with no overtime pay and improperly classified them as independent contractors." [#1 at ¶¶ 2–4]. These allegations are repeated throughout the Complaint in a variety of forms. *E.g.*, [*id.* at ¶¶ 8, 14, 17, 46, 55, 56, 57].

The Complaint then defines the putative opt-in plaintiffs as:

> Current and former oilfield personnel employed by, or working on behalf of, Antero Resources Corp., during the past three years who were classified as independent contractors and paid a day-rate.

[#1 at ¶ 8]. Plaintiff further alleges that "[n]umerous employees have been victimized by this pattern, practice and policy which are in willful violation of the FLSA. Many of these employees have worked with Stallings and have reported that they were paid in the same manner and were not properly compensated for all hours worked as required by the FLSA." [*Id.* at ¶ 54]. The Complaint goes on to aver "[f]rom his observations and discussions with these employees, Stallings is aware that the illegal practices or policies of Antero have been imposed on the Putative Class Members." [*Id.* at ¶ 55].

The Motion for Conditional Certification further limits the putative opt-in plaintiffs as:

> All current and former Solids Control Operators and Pipeline Inspectors employed by, or working on behalf of, Antero Resources Corp., who were classified as independent contractors and paid a day-rate, at any time from 3 years prior to the date of mailings, and the present.

[#23-1 at 2]. In his Declaration, Mr. Stallings states under oath that he received a flat sum day-rate, regardless of hours worked, and that "[a]ll of the other independent contractors in these positions were paid the same way." [#23-2 at ¶ 3]. Elsewhere he declares, "[b]ased on my experience with Antero, observations on locations, and my conversations with co-workers," the schedules imposed by Antero, including twelve-plus hour days, "were typical of all" SCOs and PIs; "all or the majority of Antero's [SCOs] and [PIs] were classified as independent contractors

and paid a day-rate"; "all . . . [SCOs] and [PIs] regularly worked more than 40 hours each week without receiving overtime compensation," which was a "standard pay practice"; and "I know there is a general interest among the [SCOs] and [PIs] in recovering back wages[.]" [*Id.* at ¶¶ 8, 13, 14, 15, 22].

Antero questions whether Plaintiff ever worked as a SCO for Antero, *see* [#32 at 1 n.1; #32-1 at ¶ 8], but that issue is one that cannot be resolved at this juncture because both the Complaint and Mr. Stallings's Declaration indicate that he was employed both as a SCO and a PI. [#1 at ¶ 7; #23-2 at ¶ 2]. The Complaint and Declaration describe Mr. Stallings's job duties as "performing manual and standardized labor in the field—either with the solids control equipment or the pipeline inspections" [#23-2 at ¶ 11] and "reporting daily activities to Antero supervisors" [#1 at ¶ 19]. Mr. Stallings further asserts that the "daily and weekly activities of the Putative Class Members were routine and largely governed by standardized plans, procedures, and checklists created by Antero"; that "Putative Class Members were prohibited from varying their job duties," which were primarily "manual labor/technical in nature"; the "Putative Class Members performed substantially similar job duties related to servicing oil and gas operations in the field"; and "[a]ll of the Putative Class Members perform the same or similar job duties" and are required to adhere to Antero's direction of "day-to-day activities". [#1 at ¶¶ 36, 38, 40, 45]. Mr. Stallings states that these statements are based on his "experience with Antero, observations on locations, and [his] conversations with co-workers." *See, e.g.*, [#23-2 at ¶¶ 8, 12, 15]. He further declares, "I know that Antero's [SCOs] and [PIs] performed the same or similar job duties that I performed . . . because the job duties traditionally performed by [SCOs] and [PIs] are very standardized and are typically performed in the same or similar manner." [*Id.* at ¶ 5].

This case presents a close call, and there is no question that this court would prefer additional facts in both the Complaint and Plaintiff's Declaration to inform the consideration of this instant motion. But it is sufficient at this stage to provide "nothing more than substantial allegations that the putative class members were together the victims of a single decision, policy, or plan." *Thiessen*, 267 F.3d at 1102 (citation and internal quotation marks omitted). This can be established through a plaintiff's pleadings and declaration or affidavit. *See Zaldivar v. JMJ Caterers, Inc.*, 166 F. Supp. 3d 310, 318 (E.D.N.Y. 2016) ("[C]ourts have routinely found that the allegations in the pleadings and the personal observations of one plaintiff's affidavit are sufficient to make the modest factual showing necessary to conditionally certify a class." (collecting cases) (citations and internal brackets and quotation marks omitted)). Therefore, given the lenient standard, this court concludes that Mr. Stallings has made substantial allegations that he and other SCOs and PIs who worked at the same location(s)[3] were subject to a single decision, policy, or plan to pay them as independent contractors with a single day-rate for manual labor and for hours worked in excess of forty.

However, this court concludes that any conditional certification and resulting *Hoffman-LaRoche* type notice must be limited to SCOs and PIs at the locations where Mr. Stallings worked.[4] In review of both the Complaint and Declaration, Mr. Stallings's knowledge is limited to his personal observations and his discussions with co-workers at the location(s) he actually worked. He makes no factual allegations that permit this court to conclude that he can extend

---

[3] Mr. Stallings's precise work locations from January 2014 to October 2015 will need to be defined, as discussed below in the section considering the appropriate notice.

[4] It appears from the proposed Notice that Mr. Stallings is limiting his definition of putative opt-in plaintiffs to SCOs and PIs, as opposed to the broader definition contained in the Complaint. *Compare* [#23-1 at 2] *with* [#1 at ¶ 8]. To the extent that Mr. Stallings seeks to include any position beyond SCO and PI, he has failed to establish that he has any knowledge of any job duties beyond his own to justify inclusion. *See Stubbs v. McDonald's Corp.*, 227 F.R.D. 661, 666 (D. Kan. 2004).

any of his assertions to any Antero locations beyond those where he worked. There are no allegations that Mr. Stallings knew of other SCOs and PIs that worked in other Antero locations; that he visited or personally observed any other locations; that he spoke to any SCOs or PIs who worked at any other location; or that any of his co-workers had previously or subsequently worked at other Antero locations and informed him that the job duties or applicable pay policies were substantially similar. Mr. Stallings does not point the court to a job description or other documentation that reflects that there is a standard set of duties, or a standard pay policy, for SCOs and PIs working for Antero at any U.S. location. *See Blancarte v. Provider Plus, Incorporated*, No. 11-2567-JAR-KGG, 2012 WL 4442642, at *3 (D. Kan. Sept. 26, 2012) (denying conditional certification for "mandatory lunch hour policy applie[d] uniformly to all Delivery Driver/Technicians," when the "[p]laintiff himself is the lone example of a Delivery Driver/Technician being required to work off-the-clock over the lunch hour"); *Peer v. Grayco Mgmt. LLC*, No. 3:16-CV-01578, 2017 WL 2403269, at *4 (M.D. Tenn. June 2, 2017) (denying conditional certification where the plaintiff relied on his complaint and sole declaration and sought conditional certification of a city-wide class, despite only working at one specific location).

Additionally, the Complaint's general statements related to "current and former oilfield personnel, employed by, or working on behalf of, Antero Resources Corp." are too vague and conclusory to support potential opt-in plaintiffs beyond Mr. Stallings's specific locations of employment. "Despite the lenient standard at this stage, mere conclusory declarations or those based on hearsay or speculation are insufficient to grant conditional FLSA collective action certification." *Beall v. SST Energy Corp.*, No. 15-CV-01741-MSK-NYW, 2016 WL 286295, at *1 (D. Colo. Jan. 25, 2016). Indeed, "[t]he notice and opt-in process outlined by the FLSA is not

13

a discovery device to determine whether conditional certification is appropriate. More is required under the law, even at the first stage of the conditional certification process." *Sanchez v. JMP Ventures, L.L.C.*, No. 13 CIV. 7264 KBF, 2014 WL 465542, at *2 (S.D.N.Y. Jan. 27, 2014).

II. **Willfulness**

Defendant also argues that the court should limit any certification to the two-year limitations period, as opposed to a three-year limitations period for willful violations, because "Plaintiff has made no factual allegations from which willfulness can be inferred by the Court." [#32 at 11 n.3]. Plaintiff does not respond to this argument in his Reply. [#33].

Recently, the Tenth Circuit considered whether a complaint had sufficiently alleged willfulness in the context of the FLSA, as required to apply a three, rather than two, year statute of limitations. *See Fernandez v. Clean House, LLC*, --- F. 3d ----, 2018 WL 1123873 (10th Cir. Mar. 2, 2018). In ruling that willfulness had been adequately pleaded, the Tenth Circuit first observed that a statute of limitations defense is an affirmative defense and, thus, the defendant bears the burden at the motion to dismiss phase. *Id.* at *2. Further, the *Fernandez* court held that dismissal of an allegation of willfulness on a Rule 12(b)(6) motion is only appropriate when all the elements of the affirmative defense appear plainly on the face of the complaint itself. *Id.* Here, Plaintiff alleges that "Antero knowingly, willfully, or in reckless disregard carried out [an] illegal pattern or practice of failing to pay the Putative Class Members overtime compensation. Antero's failure to pay overtime compensation to these employees were neither reasonable, nor was the decision not to pay overtime made in good faith." [#1 at ¶ 52]. In light of *Fernandez*, this court concludes that such allegations are sufficient at this stage, and the proposed notice should extend three, rather than two, years back.

**III. Notice**

As mentioned, similarly situated employees in an FLSA collective action must affirmatively opt into the litigation. Upon granting conditional certification of an FLSA collective action, a plaintiff may disseminate notice and consent forms to putative plaintiffs, informing them of the litigation and giving instructions for how to join in the action. *See Hoffman La-Roche*, 493 U.S. at 170. Under the FLSA, the court must ensure that the notice to potential opt-in plaintiffs is fair and accurate. *See id.; Avendano v. Averus, Inc.*, No. 14-cv-01614-CMA-MJW, 2015 WL 1529354, at *10 (D. Colo. 2015). The court now turns to considering the proposed notice to potential opt-in plaintiffs. Because there are a number of issues that need to be addressed in the proposed Notice, this court ORDERS that the Parties meet and confer and submit an amended proposed Notice that Judge Moore may consider in conjunction with this Recommendation within fourteen (14) days of this Recommendation. To the extent that there are any remaining issues related to the notice, they should be identified with the filing of the amended proposed Notice.

First, the Notice must be limited to SCOs and PIs classified as independent contractors who worked at the same location(s) as Mr. Stallings. Antero identifies this location as Ohio [#32 at 19], but certainly Mr. Stallings will have knowledge as to where he worked. And, although this court is not as concerned that the use of the language "employed by" would somehow implicate an improper legal conclusion [#32 at 16], it is more accurate to identify these workers as "independent contractors" as such a classification is a central part of the Complaint. *See generally* [#1].

Second, as discussed above, it is incorrect to characterize Plaintiff or potential opt-in plaintiffs as "Class Representatives" or "Class Members." That terminology refers to classes certified under Rule 23, and is not applicable to the FLSA claim before the court.

Third, in Section 6, the Notice inaccurately suggests that opt-in plaintiffs must be represented by the Josephson Dunlap Law Firm and Bruckner Burch PLLC, and fails to advise potential opt-in plaintiffs that they may secure their own representation or proceed *pro se*. Indeed, the statement in Section 3, indicating that "[i]nstead of contacting the above counsel, you may also contact counsel of your choice" does not resolve the issue, and is confusing in light of Section 6, which advises potential opt-in plaintiffs that "[i]f you choose to join this collective action lawsuit, your attorneys will be Michael A. Josephson and Lindsay R. Itkin of the law firm Josephson Dunlap Law Firm and Richard J. (Rex) Burch and Matthew S. Parmet of the law firm Bruckner Burch, PLLC." Similarly, the suggestion that an opt-in plaintiff "should" contact either of these firms if they have questions is inappropriate. While an opt-in plaintiff may contact such firms, each potential opt-in plaintiff may secure his or her own counsel or proceed *pro se*.

Fourth, the court finds that it is appropriate to send a single notice via U.S. Mail to the identified potential opt-in plaintiffs. Though Mr. Stallings indicates that electronic mail is necessary, this court is not persuaded that multiple notices are required, and there has been no indication that electronic mail is any more reliable than U.S. Mail in this instance. However, this court is equally not persuaded that Plaintiff should not be provided the telephone number for each potential opt-in plaintiff. Therefore, within fourteen (14) days of this Recommendation, Antero will provide the names, last known address, and last known telephone numbers of SCOs

and PIs who were independent contractors for Antero from March 12, 2015 to the present for the location(s) where Mr. Stallings worked.

## CONCLUSION

Accordingly, this court respectfully **RECOMMENDS** that:

(1) Plaintiff Brett Stallings's Expedited Motion for Conditional Certification and Notice to Putative Class Members [#23] be **GRANTED IN PART and DENIED IN PART**.[5]

In addition, **IT IS ORDERED** that:

(1) By **March 26, 2018**, the Parties will meet and confer and submit an amended proposed Notice for the court's consideration, taking into account the court's directions set forth herein; and

(2) By **March 26, 2018**, Antero will provide the names, last known addresses, and last known telephone numbers of Solids Control Operators and Pipeline Inspectors who were

---

[5] Within fourteen days after service of a copy of the Recommendation, any party may serve and file written objections to the Magistrate Judge's proposed findings and recommendations with the Clerk of the United States District Court for the District of Colorado. 28 U.S.C. § 636(b)(1); Fed. R. Civ. P. 72(b); *In re Griego*, 64 F.3d 580, 583 (10th Cir. 1995). A general objection that does not put the District Court on notice of the basis for the objection will not preserve the objection for *de novo* review. "[A] party's objections to the magistrate judge's report and recommendation must be both timely and specific to preserve an issue for de novo review by the district court or for appellate review." *United States v. One Parcel of Real Property Known As 2121 East 30th Street, Tulsa, Oklahoma*, 73 F.3d 1057, 1060 (10th Cir. 1996). Failure to make timely objections may bar *de novo* review by the District Judge of the Magistrate Judge's proposed findings and recommendations and will result in a waiver of the right to appeal from a judgment of the district court based on the proposed findings and recommendations of the magistrate judge. *See Vega v. Suthers*, 195 F.3d 573, 579-80 (10th Cir. 1999) (District Court's decision to review a Magistrate Judge's recommendation *de novo* despite the lack of an objection does not preclude application of the "firm waiver rule"); *International Surplus Lines Insurance Co. v. Wyoming Coal Refining Systems, Inc.*, 52 F.3d 901, 904 (10th Cir. 1995) (by failing to object to certain portions of the Magistrate Judge's order, cross-claimant had waived its right to appeal those portions of the ruling); *Ayala v. United States*, 980 F.2d 1342, 1352 (10th Cir. 1992) (by their failure to file objections, plaintiffs waived their right to appeal the Magistrate Judge's ruling). *But see Morales-Fernandez v. INS*, 418 F.3d 1116, 1122 (10th Cir. 2005) (firm waiver rule does not apply when the interests of justice require review).

independent contractors for Antero from March 12, 2015 to the present for the location(s) where Mr. Stallings worked.

DATED: March 12, 2018

BY THE COURT:

Nina Y. Wang
United States Magistrate Judge